## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CASE NO.**

VINCENT ROSENQUIST, and
CONSTANCE ROSENQUIST,
his wife,

       *Plaintiffs,*

v.

PFIZER, INC., a foreign corporation,

       *Defendant.*

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, VINCENT ROSENQUIST and CONSTANCE ROSENQUIST, sue Defendant, PFIZER, INC., and allege as follows:

### NATURE OF ACTION

1.    This case involves the unsafe medication Bextra® ("BEXTRA") which was manufactured, sold, distributed and promoted by Defendant, PFIZER, INC. Defendant, PFIZER, INC. misrepresented that BEXTRA was safe and an effective way to relieve osteoarthritis and management of acute pain in adults, when in fact the drug causes acute medical problems including serious cardiovascular events and death.

### JURISDICTION, PARTIES, AND VENUE

2.    This is an action for damages in excess of seventy-five thousand dollars ($75,000.00) exclusive of costs and interest. This Court has subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

3.      At all times relative to this action, Plaintiffs, VINCENT ROSENQUIST and CONSTANCE ROSENQUIST, have been residents of Pasco County Florida, married and living together as husband and wife.

4.      Defendant, PFIZER, INC. ("PFIZER") is a Delaware corporation that has its principal place of business in New York.

5.      This Court has jurisdiction over PFIZER because a substantial portion of the wrongdoing alleged in this Complaint took place in Florida.  PFIZER is authorized to do business in Florida and has done and continues to do business in the Florida. PFIZER has sufficient minimum contacts with Florida and/or otherwise intentionally avails itself of the markets in Florida.  PFIZER has multiple locations and sells its products within the State of Florida and in Pasco County.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because at all times material hereto, Plaintiff resided in this District, obtained and used BEXTRA, the prescription medication that forms the basis of this lawsuit, in this District, was injured as the result of his BEXTRA usage in this District, and because Defendant marketed, advertised and distributed BEXTRA in this District, thereby receiving substantial financial benefit and profits in this District.

## FACTUAL ALLEGATIONS

7.      At all times relevant, Defendant did manufacture, create, design, test, label, sterilize, distribute, supply, prescribe, market, sell, advertise, warn, consult or failed to consult, and otherwise distributed in interstate commerce and in the State of Florida the pharmaceutical product known as BEXTRA.

2

8.      BEXTRA is the trade name of the generic drug Valdecoxib. Bextra was utilized, prescribed, and sold by physicians for pain management and the relief of pain. BEXTRA is in a class of pain medications called non-steroidal anti-inflammatory drugs – NSAIDs. Asprin, ibuprofen (trade name Advil®) and naproxen (trade name Aleve®) are well known examples of NSAIDs.

9.      NSAIDs reduce pain by blocking the production of pain transmission enzymes in the body called cycloxygenose or "COX."   There are two forms of COX enzymes, COX-1 and COX-2.

10.      It is generally accepted in the medical community that by blocking the COX-1 enzyme, the body's ability to protect gastric tissue is hampered and as a result, harmful gastrointestinal side effects can manifest.

11.      It is generally accepted in the medical community that blocking the COX-2 enzyme lowers levels of prostacyclin, a substance responsible for preventing the formation of blood clots, and causes serious cardiovascular events, such as heart attack and stroke.

12.      Traditional NSAIDs, like aspirin and ibuprofen, reduce pain sensations by inhibiting both COX-1 and COX-2 enzymes simultaneously.   As to be expected, traditional NSAIDs cause ulcers in the stomach and intestines.

13.      Defendant set out to develop a remedy to eliminate the gastrointestinal risk of traditional NSAIDs by developing selective inhibitors that would block only COX-2 production and supposedly reduce the risk of stomach ulcers.   In making this decision, Defendant intentionally and/or recklessly disregarded the current medical

knowledge that selective COX-2 inhibition lowers prostacyclin levels, causes blood clots, and gives rise to serious cardiovascular events, such as heart attack and stroke.

14.    During the medical trials of BEXTRA, Defendant learned that selectively inhibiting the COX-2 enzyme lowers prostacyclin levels, causes blood clots, and gives rise to serious cardiovascular events such as heart attacks and strokes.

15.    Prior to releasing BEXTRA, Defendant launched Celebrex, the first of the three major COX-2 inhibitor drugs, in early 1999.  In May, 1999, Merck & Co., Inc., launched Vioxx®, its own selective COX-2 inhibitor.

16.    In an attempt to increase its market share in this extremely lucrative market, Defendant sought approval of a second generation selective COX-2 inhibitor and filed for the Food & Drug Administration ("FDA") approval of BEXTRA by January 16, 2001 for the prevention and treatment of acute pain, treatment of primary dysmenorrhea and relief from the symptoms of osteoarthritis and adult rheumatoid arthritis.  On or about November 16, 2001 the FDA granted approval of BEXTRA for two particular uses: the treatment of primary dysmenorrhea and relief from the signs and symptoms of osteoarthritis and rheumatoid arthritis.  The FDA did not grant approval to promote and market BEXTRA for the prevention and management of acute pain.  Also, the FDA did not grant approval to promote and market BEXTRA as more effective than other NSAIDs in preventing clinically serious gastrointestinal events such as perforations, ulcers or gastric bleeding.

17.    Irrespective of the FDA's refusal to approve Defendant's request to promote BEXTRA as having superior safety, Defendant and their representatives and agents misrepresented the safety profile of BEXTRA to consumers and their healthcare

4

providers. Defendant proceeded to promote, market, sell and distribute BEXTRA as a much safer and more efficient painkiller than other NSAIDs.

18.     Based upon studies performed on BEXTRA, Celebrex, Vioxx and other COX-2 inhibitors, Defendant knew by 1998 that selective COX-2 inhibitors posed serious cardiovascular risks for individuals who ingested them, and presented additional threats to anyone with existing cardiovascular risk factors.

19.     Following a series of studies and trials initiated by Defendant and others, Defendant was aware of the serious cardiovascular risks posed by selective COX-2 inhibitors including BEXTRA, long before Defendant began marketing BEXTRA as being safe and more effective than traditional NSAIDs for all patients without regard for cardiovascular risk.

20.     On December 9, 2004 the FDA issued new information regarding the side effects associated with the use of BEXTRA. The FDA required Defendants to add stronger warnings on the BEXTRA label.  The enhanced warnings followed the wake of the results of the additional cardiovascular studies performed by Defendants, as well as numerous complaints by the FDA regarding severe skin reactions to the drug.

21.     Despite years of studies regarding COX-2 inhibitors as well as disturbing new studies specifically analyzing the risk of BEXTRA, Defendant failed to take any action to protect the health and welfare of its consumers. Rather, Defendant continued to offer the drug for sale.

22.     BEXTRA has been linked to several severe and life threatening medical disorders including, but not limited to, edema, change in blood pressure, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications and death.

23.    On April 7, 2005 the FDA requested that Defendants voluntarily drop

BEXTRA from the market.  The FDA alert stated:

> "FDA has requested that Pfizer voluntarily withdraw Bextra from
> the United States market.  Pfizer has agreed to suspend sales and
> marketing of Bextra in the United States, pending further
> discussion with the Agency.    At this time, the Agency has
> concluded that the overall risk versus benefit profile of Bextra is
> unfavorable.  This conclusion is based on the potential increased
> risk for serious cardiovascular (CV) adverse events, which appears
> to be a class effect of non-steroidal anti-inflammatory drugs
> (NSAIDs)(excluding aspirin), an increased risk of serious skin
> reactions (e.g., toxic epidermal necrolysis, Steven-Johnson
> syndrome, erythema multifome) compared to other NSAIDs, and
> the fact that Bextra has not been shown to offer any unique
> advantages over the other available NSAIDs."

24.    The FDA further noted:

> "Bextra has been demonstrated to be associated with an increased
> risk of serious adverse CV events in two short-term trials in
> patients immediately post-operative from coronary artery bypass
> graft (CABG) surgery.    Data are not available from long-term
> controlled clinical trials to evaluate the cardiovascular safety of
> Bextra following chronic use. FDA has concluded that it is
> reasonable to extrapolate the adverse CV risk information for
> Bextra from the short-term CABG trials to be associated with an
> increased risk of serious adverse CV events (e.g., death, MI,
> stroke), and the well described risk of serious, and often life
> threatening gastrointestinal bleeding." Id.

25.    On April 7, 2005 PFIZER suspended the sales of BEXTRA.  BEXTRA

has been withdrawn from the market since that time.

26.    Defendant widely and successfully marketed BEXTRA and in the United

States, by undertaking an advertising blitz extolling the virtues of BEXTRA in order to

induce widespread use of the product.    The marketing campaign consisted of

advertisement, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential users.

27.    The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that use of BEXTRA was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though the Defendant knew these to be false, and even though the Defendant has no reasonable grounds to believe them to be true.

28.    Defendant purposefully downplayed and understated the health hazards and risk associated with BEXTRA. Defendant, through promotional literature, deceived potential users of BEXTRA by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects.    Defendant concealed material relevant information from potential users and minimized use and prescriber concern regarding the safety of BEXTRA.

29.    In particular, in materials produced by Defendant, Defendant falsely misrepresented the severity, frequency and nature of adverse health effects caused by BEXTRA, and falsely represented that adequate testing had been conducted concerning BEXTRA.

30.    Defendant's strategy has was to aggressively market and sell BEXTRA by falsely misleading potential users about the product and by failing to protect users from serious dangers which Defendant knew or should have known to result from use of the product.

31.    The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the impression that BEXTRA was safe for human consumption, and had fewer side effects and adverse reactions than other NSAIDs.

## SPECIFIC ALLEGATIONS REGARDING
## PLAINTIFF VINCENT ROSENQUIST

32.    Plaintiff, VINCENT ROSENQUIST began taking BEXTRA on or about September 2002, as prescribed by his physician, and discontinued taking BEXTRA on or about June 2005.

33.    Plaintiff VINCENT ROSENQUIST had no history of heart disease prior to taking BEXTRA.

34.    On April 27, 2006, Plaintiff, VINCENT ROSENQUIST, suffered a myocardial infarction ("MI") and was hospitalized.  During medical intervention, his physicians observed significant damage to his heart caused by a previous silent and undetected MI that occurred, approximately one, to one and a half years prior to the April 27, 2006 event.  At the time he suffered the silent MI, he was still taking BEXTRA. VINCENT ROSENQUIST later underwent a quadruple bypass on May 30, 2006, and now faces the potential for sudden cardiac death.

35.    The aforementioned injuries and necessary medical intervention has caused VINCENT ROSENQUIST pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and earning capacity, and continuing and permanent injuries.

36.    At all times material, the injuries suffered by the Plaintiff VINCENT ROSENQUIST were caused by his ingestion and use of the product BEXTRA.

## COUNT I

### STRICT PRODUCT LIABILITY - DEFECTIVE DESIGN
### RESTATEMENT (SECOND) OF TORTS § 402(A)

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

37.    PFIZER tested, designed, manufactured, distributed, marketed and placed BEXTRA into the stream of interstate and international commerce.  BEXTRA was intended to and did reach the ultimate consumers, including the Plaintiff, VINCENT ROSENQUIST, in a condition that was substantially unchanged from the time it left PFIZER's control.

38.    BEXTRA was a dangerous and defective product when it was placed in the stream of commerce by PFIZER because of its propensity to cause cardiovascular injuries.

39.    BEXTRA was a dangerous and defective product when it was placed in the stream of commerce by PFIZER because the risks created by its propensity to cause cardiovascular injuries and exceeded the benefits associated with the use of BEXTRA.

40.    As a direct and proximate result of defective and dangerous condition of BEXTRA, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT II

### STRICT PRODUCT LIABILITY - FAILURE TO WARN
### RESTATEMENT (SECOND) OF TORTS § 402 (A)

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

41.    BEXTRA was a dangerous and defective product because it lacked adequate warnings to physicians and consumers, including the Plaintiff, VINCENT ROSENQUIST, concerning BEXTRA's propensity to cause cardiovascular injuries.

42.    BEXTRA was not accompanied by adequate warnings to physicians and consumers, including Plaintiff, VINCENT ROSENQUIST, concerning BEXTRA's propensity to cause cardiovascular injuries before and following BEXTRA's introduction into the stream of commerce and after Defendant PFIZER began receiving widespread reports and controlled studies of BEXTRA user's suffering cardiovascular injuries.

43.    As a direct and proximate result of defective and dangerous condition of BEXTRA, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT III

## NEGLIGENCE

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

44.    PFIZER had a duty to the consuming public, including the Plaintiff, VINCENT ROSENQUIST to exercise reasonable care in the research, development, testing, manufacture, sale and distribution of BEXTRA into the stream of commerce, including a duty to ensure that BEXTRA did not cause users to suffer from unreasonable, dangerous side effects.

45.    PFIZER failed to exercise ordinary care in the research, development, testing, manufacture, sale and distribution of BEXTRA into the stream of commerce

where PFIZER knew or should have known that BEXTRA created an unreasonably high risk of dangerous side effects, including, but not limited to cardiovascular injuries.

46.     PFIZER was negligent in the research, development, testing, manufacture, sale, distribution and advertising of BEXTRA, in that PFIZER: (i) failed to use due care in designing and manufacturing BEXTRA so as to avoid or reduce the risk of cardiovascular injuries associated with BEXTRA, (ii) failed to provide BEXTRA users, including the Plaintiff, VINCENT ROSENQUIST, with adequate warnings regarding the risk of cardiovascular injuries, and related possible adverse side effects associated with the use of BEXTRA, and the severity and duration of such adverse effects; (iii) failed to conduct adequate pre-clinical and clinical testing and post-marketing oversight to determine the safety of BEXTRA; (iv) failed to provide adequate training and instruction to medical care providers for the appropriate use of BEXTRA including proper dosages; (v) failed to warn, prior to actively encouraging the sale of BEXTRA, regarding the possibility of users developing serious and potentially fatal side effects, including, but not limited to, cardiovascular injuries; (vi) failed to adequately test and/or warn about the dangers of long term use of BEXTRA; (vii) negligently marketed BEXTRA and promoted its use when the defendant knew or should have known that the product posed a hazard to the public and (viii) failed to otherwise use due care in designing, manufacturing, testing, warning about, advertising, marketing and/or distributing BEXTRA.

47.     PFIZER knew or should have known that consumers such as Plaintiff, VINCENT ROSENQUIST, would suffer injury as a result of PFIZER's failure to exercise due care as described above.

11

48.    As a direct and proximate result of said negligence and carelessness of Defendant, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

**COUNT IV**

**NEGLIGENCE PER SE**

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

49.    At all times herein mentioned Defendant had an obligation not to violate the law, in the manufacture, design, formulation, compounding, testing, production, procession, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, consulting, sale, and warning of the risks and dangers of BEXTRA.

50.    At all times herein mentioned Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C Section 301, et seq., related amendments and codes and federal regulations provided therein.

51.    Plaintiff, VINCENT ROSENQUIST, is within the class of persons the statutes and regulations described above are designed to protect, and his injuries are the type of harm these statutes are designed to prevent.

52.    Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of individuals such as the Plaintiff, VINCENT ROSENQUIST, making the Defendant negligent per se.

53.    The labeling lacked adequate information on the use of BEXTRA even though the Defendant was aware of widespread use of BEXTRA. [21 C.F.R. Section 301.56(a) and (d)].

54.    The labeling lacked adequate information on the approximate kind, degree and duration of expected improvement, alone or in combination in violation of 21 C.F.R. Section 301.57(c)(3)(I).

55.    The labeling did not state that there was a lack of evidence to support the common belief of the safety and advocacy of BEXTRA [21 C.F.R. Section 301.57(c)(3)(I) and (iv) and (c)(2)].

56.    The labeling failed to add warnings for serious cardiovascular events and death as soon as there was reasonable evidence of their association with the drugs. [21 C.F.R. Section 301.57(e)].

57.    There was inadequate information for patients for the safe and effective use of BEXTRA in violation of 21 C.F.R. Section 301.57(f)(2).

58.    There was inadequate information regarding special care to be exercised by doctors for the safe and effective use of BEXTRA in violation to 21 C.F.R. Section 301.57(f)(1).

59.    The labeling was a misleading promotion in violation of 21 C.F.R. Section 201.56(b).

60.    As a direct and proximate result of the violations of the statutes described above, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT V

## BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

61.    At all times material hereto, PFIZER expressly warranted to purchasers and users of BEXTRA like the Plaintiff, VINCENT ROSENQUIST, by and through statements made by Defendant, PFIZER or its authorized agents and/or sales representatives, orally and/or in publications electronic media, marketing and promotional materials intended for the general public, that BEXTRA was safe, effective, and proper for its intended use throughout the course of that use.

62.    In purchasing and using BEXTRA, Plaintiff VINCENT ROSENQUIST relied on the skill, judgment, representations, packaging and foregoing express warranties and representations of Defendant.  Said warranties and representations were false in that BEXTRA was not safe and was unfit for the uses for which it was intended.

63.    BEXTRA does not conform to PFIZER's express representations because BEXTRA is not safe and has unreasonably high levels of serious side effects, including life-threatening cardiovascular injuries.

64.    As a direct and proximate result of the forgoing breach of express warranty by Defendant, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT VI

## BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

65.    Defendant PFIZER impliedly warranted to the consuming public, including the Plaintiff, VINCENT ROSENQUIST that BEXTRA was fit for the

14

particular purpose for which it was designed and marketed, and that it was a safe and suitable product.

66.    In purchasing and using BEXTRA, Plaintiff, VINCENT ROSENQUIST relied on PFIZER's superior skill and judgment and on the implied warranty of fitness for the particular purpose for which the Plaintiff purchased and used BEXTRA.

67.    PFIZER further impliedly warranted to the consuming public, including the Plaintiff, VINCENT ROSENQUIST that BEXTRA was of merchantable quality and was safe, and in proper condition for the ordinary use for which it was designed, marketed and used.

68.    PFIZER knew or should have known that individuals including Plaintiff, VINCENT ROSENQUIST relied upon Defendant to provide goods merchantable quality fit, safe and in proper condition for the ordinary use for which such goods were designed, marketed and used.

69.    In reliance upon such implied warranties of merchantability by PFIZER, Plaintiff, VINCENT ROSENQUIST purchased and consumed BEXTRA.

70.    BEXTRA was not fit, safe and in proper condition for the ordinary use for which it was designed, marketed, and used, and further, by reason of PFIZER's failure to provide adequate warnings regarding the dangers of BEXTRA, the product was not merchantable or fit to use for its intended purpose.

71.    As a direct and proximate result of the forgoing breach of implied warranty by Defendant, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

72.     Defendant PFIZER, from the time that BEXTRA was first manufactured, marketed and distributed, and up to the present, made false misrepresentations as previously set forth herein to Plaintiff, VINCENT ROSENQUIST, Plaintiff's healthcare providers and the general public, including but not limited to, the misrepresentation that BEXTRA was safe, fit and effective for human consumption.

73.     At all times material, Defendant conducted an aggressive sales and marketing campaign to promote the sale of BEXTRA and willfully deceived Plaintiff, VINCENT ROSENQUIST, Plaintiff's healthcare providers and the general public as to the health risks and consequences associated with the use of BEXTRA.

74.     The Defendant made the forgoing misrepresentations without any reasonable ground for believing them to be true.  These misrepresentations were made directly be Defendant, by sales representatives and other authorized agents of the Defendant, and in publications and other written materials directed to the public and healthcare providers, with the intention of inducing reliance thereon, and the prescription, purchase and use of BEXTRA.

75.     The foregoing misrepresentations by the Defendant were in fact false, in that BEXTRA was not safe, fit and effective for human consumption, the use of BEXTRA is hazardous to health, and BEXTRA has a serious propensity to cause serious

injuries to users, including, but not limited to, the injuries suffered by Plaintiff, VINCENT ROSENQUIST.

76.    The foregoing misrepresentations by Defendant were made with the intention of inducing reliance and the prescription, purchase and use of BEXTRA.

77.    In reliance on Defendant's misrepresentations, Plaintiff, VINCENT ROSENQUIST was induced to purchase and use BEXTRA.    If Plaintiff, VINCENT ROSENQUIST had known of the true facts and the facts concealed by Defendant, he would have not have used BEXTRA.    The reliance of Plaintiff, VINCENT ROSENQUIST, upon Defendant's misrepresentations was justified because such misrepresentations were made and conducted by Defendant who was in a position to know the true facts.

78.    As a direct and proximate result of the forgoing negligent representation by Defendant, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT VIII

## FRAUDULENT MISREPRESENTATION

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

79.    Defendant PFIZER, from the time that BEXTRA was first manufactured, marketed and distributed, and up to the present, made fraudulent misrepresentations as previously set forth herein to Plaintiff, VINCENT ROSENQUIST, Plaintiff's healthcare providers and the general public, including but not limited to, the misrepresentation that BEXTRA was safe, fit and effective for human consumption

17

80.    At all times material, Defendant conducted an aggressive sales and marketing campaign to promote the sale of BEXTRA and willfully deceived Plaintiff, VINCENT ROSENQUIST, Plaintiff's healthcare providers and the general public as to the health risks and consequences associated with the use of BEXTRA.

81.    The fraudulent misrepresentations by the Defendant were in fact false, in that BEXTRA was not safe, fit and effective for human consumption, the use of BEXTRA is hazardous to health, and BEXTRA has a serious propensity to cause serious injuries to users, including, but not limited to, the injuries suffered by Plaintiff, VINCENT ROSENQUIST.

82.    When Defendant made these fraudulent misrepresentations of material fact, it knew of the outrageousness of the representations or acted with reckless disregard thereof, as to be equivalent to acting with intent, yet Defendant intended Plaintiff, VINCENT ROSENQUIST, Plaintiff's healthcare providers and the general public to rely upon these misrepresentations.

83.    These fraudulent misrepresentations were made directly by Defendant, by sales representatives and other authorized agents of Defendant, and in publications and other written materials directed to the public and healthcare providers, with the intention of inducing reliance thereon, and the prescription, purchase and use of BEXTRA.

84.    In reliance on Defendant's fraudulent misrepresentations, Plaintiff, VINCENT ROSENQUIST was induced to purchase and use BEXTRA.    If Plaintiff, VINCENT ROSENQUIST had known of the true facts he would have not have used BEXTRA.    The reliance of Plaintiff, VINCENT ROSENQUIST, upon Defendant's

fraudulent misrepresentations was justified because such fraudulent misrepresentations were made and conducted by Defendant who knew the true facts.

85.    As a direct and proximate result of Defendant PFIZER's wanton, reckless and outrageous conduct, Plaintiff, VINCENT ROSENQUIST suffered injuries and damages as alleged herein.

## COUNT IX

## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

86.    This Count is brought pursuant to the Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.201, et seq.

87.    Plaintiff, VINCENT ROSENQUIST is a "consumer" and "person" as those terms are defined by Florida Statutes, Section 501.203.

88.    Defendant has engaged in "trade of commerce" as that term is defined by Florida Statutes, section 501.203(8).

89.    Defendant's advertisements and promotion of BEXTRA were deceptive, misleading and intended solely to increase its own profits to the consumer's detriment. PFIZER has profited from its uniform deceptive practices and marketing campaign in that PFIZER was able to sell millions of BEXTRA brand products, a dangerous and deadly substance, which it would not have otherwise sold had it disclosed the truth to consumers.

90.    PFIZER's uniform marketing campaign, wherein Defendant advertised, represented, promoted and marketed BEXTRA as an anti-inflammatory drug safe for human consumption, but failed to disclose that consuming BEXTRA would result in a

substantial increase in the likelihood of heart attack, stroke or other cardiovascular condition, constituted an unfair or deceptive trade practice in violation of FDUTPA because it was unlawful, offended public policy as established by statutes, regulations and the common law, was immoral, unethical, oppressive and unscrupulous, and resulted in substantial injury to consumers, including Plaintiff, VINCENT ROSENQUIST.

91.     Pursuant to Section 501.211(2) of the Florida Deceptive and Unfair Trade Practices Act, Plaintiff, VINCENT ROSENQUIST seeks actual damages plus attorneys' fees and court costs for PFIZER's conduct that directly and proximately resulted in the suffered injuries and damages as alleged herein.

**COUNT X**

**CLAIM FOR LOSS OF CONSORTIUM**

Plaintiffs incorporate by reference all other paragraphs of this complaint as set forth fully herein.

92.     As a further direct and proximate cause of the above described negligence, Plaintiff, CONSTANCE ROSENQUIST, has suffered and will continue to suffer for the indefinite future, the loss of her husband's society, services, consortium and support.

**GLOBAL PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiffs, VINCENT ROSENQUIST and CONSTANCE ROSENQUIST demand judgment Defendant, PFIZER, for all compensatory damages in excess of the minimal jurisdictional limits of this Court, punitive damages, prejudgment and post judgment interest as allowed by law, costs, and furthermore demand trial by jury of all issues so triable.

Respectfully submitted this _29th_ day of October, 2007.

_____

**Lynn M. Sasso**
Florida Bar No. 0341370
**Sally Prieto-Chomat**
Florida Bar No. 0016938
THE FERRARO LAW FIRM, P.A.
400 Ponce de Leon Blvd., Suite 700
Miami, Florida 33146
(305) 375-0111 (Telephone)
(305) 379-6222 (Facsimile)
*Attorneys for Plaintiff*

21

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### MIDDLE   District of   FLORIDA

VINCENT ROSENQUIST, and
CONSTANCE ROSENQUIST,
his wife,

v.

PFIZER, INC.

**SUMMONS IN A CIVIL CASE**

CASE NO:

8:07-CV-02011-T-30EAJ

TO: (Name and address of Defendant)

PFIZER, INC., c/o
CT Corporation System
1200 South Pine Island Road
Plantation, Florida 33324

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Lynn M. Sasso
THE FERRARO LAW FIRM, P.A.
400 Ponce de Leon Blvd., Suite 700
Miami, Florida 33146

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

SHERYL L. LOESCH

0 5 NOV 2007

CLERK

DATE

(By) DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VINCENT ROSENQUIST and
CONSTANCE ROSENQUIST,

     Plaintiffs,

vs.                          CASE NO.: 8:07-cv-02011-JSM-EAJ

PFIZER, INC.,

     Defendant.

_____/

## DEFENDANT PFIZER INC.'S ANSWER, DEFENSES, AND JURY DEMAND

     NOW COMES Defendant Pfizer Inc. (improperly captioned in Plaintiffs' Complaint as "Pfizer, Inc.") ("Pfizer" or "Defendant") and files this Answer to Plaintiffs' Complaint ("Complaint"), and would respectfully show the Court as follows:

### I.
### PRELIMINARY STATEMENT

     The Complaint does not state in sufficient detail when Plaintiff was prescribed or used Bextra® (valdecoxib) ("Bextra®"). Accordingly, this Answer can only be drafted generally. Defendant may seek leave to amend this Answer when discovery reveals the specific time periods in which Plaintiff was prescribed and used Bextra®.

### II.
### ANSWER

#### Response to Allegation Regarding Nature of the Action

1.    Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant admits, as indicated in the package insert approved by the FDA, that Bextra® is indicated

for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

### Response to Allegations Regarding Jurisdiction, Parties, and Venue

2.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiffs' citizenship and the amount in controversy, and, therefore, denies the same. However, Defendant admits that Plaintiffs claim that the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiffs' citizenship and martial status, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

4.      Defendant admits that Pfizer is a Delaware corporation with its principal place of business in New York. Defendant denies the remaining allegations in this paragraph of the Complaint.

5.      Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding the judicial district in which the asserted claims allegedly arose, and, therefore, denies the same. Defendant admits that

Pfizer is registered to do and does business in the State of Florida. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States, including Florida, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

6.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiffs' citizenship, whether Plaintiff used Bextra®, and the judicial district in which the asserted claims allegedly arose, and, therefore, denies the same. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States, including Florida, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

## Response to Factual Allegations

7.      Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies the remaining allegations in this paragraph of the Complaint.

8.      Defendant admits, as indicated in the package insert approved by the FDA, that Bextra® is indicated for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendant states that the allegations in this paragraph of the Complaint regarding aspirin, ibuprofen,

-3-

and naproxen are not directed toward Defendant, and, therefore, no response is required.  To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint regarding aspirin, ibuprofen, and naproxen.  Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.  Defendant admits that Bextra® is in a class of drugs that is, at times, referred to as non-steroidal anti-inflammatory drugs ("NSAIDS").  Defendant denies the remaining allegations in this paragraph of the Complaint.

9.      The allegations in this paragraph of the Complaint are not directed toward Defendant, and, therefore, no response is required.  To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.

10.      The allegations in this paragraph of the Complaint are not directed toward Defendant, and, therefore, no response is required.  To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.

11.      The allegations in this paragraph of the Complaint are not directed toward Defendant, and, therefore, no response is required.  To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendant therefore lacks knowledge or

information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.

12.     The allegations in this paragraph of the Complaint are not directed toward Defendant, and, therefore, no response is required.  To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.

13.     Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same.

14.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies the remaining allegations in this paragraph of the Complaint.

15.     Plaintiffs do not allege that Plaintiff used Celebrex® in this Complaint. Nevertheless, Defendant admits that Celebrex® was launched in the United States in February 1999.  Defendant states that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  The allegations in this paragraph of the Complaint regarding Merck and Vioxx® are not directed toward Defendant, and, therefore,

no response is required. To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint regarding Merck and Vioxx®. Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

16. Defendant admits that Bextra® was approved by the FDA on November 16, 2001. Defendant admits, as indicated in the package insert approved by the FDA, that Bextra® is indicated for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

17. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

18. The allegations in this paragraph of the Complaint regarding Vioxx® and "other COX-2 inhibitors" are not directed toward Defendant, and, therefore, no response is required. To the extent a response is deemed required, Defendant states that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint regarding Vioxx® and "other COX-2 inhibitors." Defendant therefore lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, denies the same. Plaintiffs do not allege that Plaintiff used Celebrex® in this Complaint.

Nevertheless, Defendant states that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies the remaining allegations in this paragraph of the Complaint.

19.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

20.    Defendant states that the December 9, 2004 FDA Talk Paper for Bextra® speaks for itself and respectfully refers the Court to the Talk Paper for its actual language and text. Any attempt to characterize the Talk Paper is denied. Defendant denies the remaining allegations in this paragraph of the Complaint.

21.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

22.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the

potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

23.    Defendant states that the Alert for Healthcare Professionals issued by the FDA on April 7, 2005, speaks for itself, and respectfully refers the Court to the Alert for Healthcare Professionals for its actual language and text. Any attempt to characterize the Alert for Healthcare Professionals is denied. Defendant denies the remaining allegations in this paragraph of the Complaint.

24.    Defendant states that the Alert for Healthcare Professionals issued by the FDA on April 7, 2005, speaks for itself, and respectfully refers the Court to the Alert for Healthcare Professionals for its actual language and text. Any attempt to characterize the Alert for Healthcare Professionals is denied. Defendant denies the remaining allegations in this paragraph of the Complaint.

25.    Defendant admits that the sale of Bextra® was voluntarily suspended in the U.S. market as of April 7, 2005. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

26.    Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies the remaining allegations in this paragraph of the Complaint.

27.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

28.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

29.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

30.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

31.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

### Response to Factual Allegations Regarding Plaintiff

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant denies the remaining allegations in this paragraph of the Complaint.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition and whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant denies the remaining allegations in this paragraph of the Complaint.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition and whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant denies that Bextra® caused Plaintiffs injury or damage and denies the remaining allegations in this paragraph of the Complaint

35.     Defendant denies that Bextra® caused Plaintiffs injury or damage and denies the remaining allegations in this paragraph of the Complaint.

36.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used

Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies that Bextra® caused Plaintiffs injury or damage and denies the remaining allegations in this paragraph of the Complaint.

**Response to First Cause of Action:**
**Strict Product Liability – Defective Design**

Answering the unnumbered paragraph following Paragraph 36 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

37.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendant states that, in the ordinary case, Bextra® was expected to reach users and consumers without substantial change from the time of sale.  Defendant denies the remaining allegations in this paragraph of the Complaint.

38.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations in this paragraph of the Complaint.

39.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the

-11-

potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations in this paragraph of the Complaint.

40.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

**Response to Second Cause of Action:**
**Strict Products Liability – Failure to Warn**

Answering the unnumbered paragraph following Paragraph 40 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

41.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations in this paragraph of the Complaint.

12465787.1

42.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations in this paragraph of the Complaint.

43.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

## Response to Third Cause of Action: Negligence

Answering the unnumbered paragraph following Paragraph 43 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

44.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®,

-13-

and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

45.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is unreasonably dangerous, and denies the remaining allegations in this paragraph of the Complaint.

46.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint, including all subparts.

47.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies

that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

48.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

<u>**Response to Fourth Cause of Action: Negligence Per Se**</u>

Answering the unnumbered paragraph following Paragraph 48 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

49.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties. Defendant denies the remaining allegations in this paragraph of the Complaint.

50.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

51.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant denies that Bextra® caused Plaintiffs injury or damage and denies the remaining allegations in this paragraph of the Complaint.

52.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used

Bextra®, and, therefore, denies the same. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

53.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

54.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

55.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

56.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-

approved prescribing information.  Defendant states that the potential effects of Bextra®
were and are adequately described in its FDA-approved prescribing information, which was
at all times adequate and comported with applicable standards of care and law.  Defendant
denies any wrongful conduct and denies the remaining allegations in this paragraph of the
Complaint.

57.    Defendant states that this paragraph of the Complaint contains legal contentions to
which no response is required.  To the extent that a response is deemed required, Defendant
states that Bextra® was and is safe and effective when used in accordance with its FDA-
approved prescribing information.  Defendant states that the potential effects of Bextra®
were and are adequately described in its FDA-approved prescribing information, which was
at all times adequate and comported with applicable standards of care and law.  Defendant
denies any wrongful conduct and denies the remaining allegations in this paragraph of the
Complaint.

58.    Defendant states that this paragraph of the Complaint contains legal contentions to
which no response is required.  To the extent that a response is deemed required, Defendant
states that Bextra® was and is safe and effective when used in accordance with its FDA-
approved prescribing information.  Defendant states that the potential effects of Bextra®
were and are adequately described in its FDA-approved prescribing information, which was
at all times adequate and comported with applicable standards of care and law.  Defendant
denies any wrongful conduct and denies the remaining allegations in this paragraph of the
Complaint.

59.    Defendant states that this paragraph of the Complaint contains legal contentions to
which no response is required.  To the extent that a response is deemed required, Defendant
states that the potential effects of Bextra® were and are adequately described in its FDA-
approved prescribing information, which was at all times adequate and comported with

applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

60.     Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

## Response to Fifth Cause of Action: Express Warranty

Answering the unnumbered paragraph following Paragraph 60 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

61.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations in this paragraph of the Complaint.

62.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant admits that Pfizer provided FDA-

-18-

approved prescribing information regarding Bextra®. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

63.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is unreasonably dangerous, and denies the remaining allegations in this paragraph of the Complaint.

64.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

## Response to Sixth Cause of Action: Implied Warranty

Answering the unnumbered paragraph following Paragraph 64 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

65.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations in this paragraph of the Complaint.

66.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®.  Defendant denies the remaining allegations in this paragraph of the Complaint.

67.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®.  Defendant denies the remaining allegations in this paragraph of the Complaint.

68.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®.  Defendant denies the remaining allegations in this paragraph of the Complaint.

69.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used

-20-

Bextra®, and, therefore, denies the same. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations in this paragraph of the Complaint.

70.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

71.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

### Response to Seventh Cause of Action: Negligent Misrepresentation

Answering the unnumbered paragraph following Paragraph 71 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

72.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

73.    Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-

-21-

approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

74.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

75.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

76.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable

standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

77.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

78.     Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

### Response to Eighth Cause of Action: Fraudulent Misrepresentation

Answering the unnumbered paragraph following Paragraph 78 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

79.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

80.     Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant

states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

81.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

82.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

83.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable

standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

84.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

85.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

<u>Response to Ninth Cause of Action:</u><br><u>Florida Deceptive and Unfair Trade Practices Act</u>

Answering the unnumbered paragraph following Paragraph 85 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

86.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

87.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

12465787.1

88.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

89.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

90.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

91.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

### Response to Tenth Cause of Action: Loss of Consortium

Answering the unnumbered paragraph following Paragraph 91 of the Complaint, Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

92.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

### Response to Prayer for Relief and Demand for Jury Trial

Answering the unnumbered paragraph entitled "Prayer for Relief and Demand for Jury Trial," Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs injury or damage, and denies remaining the allegations in this paragraph of the Complaint.

### III.
### GENERAL DENIAL

Defendant denies all allegations and/or legal conclusions set forth in Plaintiffs' Complaint that have not been previously admitted, denied, or explained.

### IV.
### AFFIRMATIVE DEFENSES

Defendant reserves the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial.  Defendant affirmatively shows that:

### First Defense

1.    The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

2.    Bextra® is a prescription medical product.  The federal government has preempted the field of law applicable to the labeling and warning of prescription medical products. Defendant's labeling and warning of Bextra® was at all times in compliance with applicable federal law.  Plaintiffs' causes of action against Defendant, therefore, fail to state

a claim upon which relief can be granted; such claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

### Third Defense

3.     At all relevant times, Defendant provided proper warnings, information, and instructions for the drug in accordance with generally recognized and prevailing standards in existence at the time.

### Fourth Defense

4.     At all relevant times, Defendant's warnings and instructions with respect to the use of Bextra® conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured, marketed, and distributed.

### Fifth Defense

5.     Plaintiffs' action is time-barred as it is filed outside of the time permitted by the applicable Statute of Limitations, and same is pled in full bar of any liability as to Defendant.

### Sixth Defense

6.     Plaintiffs' action is barred by the statute of repose.

### Seventh Defense

7.     Plaintiffs' claims against Defendant are barred to the extent Plaintiffs were contributorily negligent, actively negligent or otherwise failed to mitigate Plaintiffs' damages, and any recovery by Plaintiffs should be diminished accordingly.

### Eighth Defense

8.     The proximate cause of the loss complained of by Plaintiffs is not due to any acts or omissions on the part of Defendant. Rather, said loss is due to the acts or omissions on the part of third parties unrelated to Defendant and for whose acts or omissions Defendant is not liable in any way.

## Ninth Defense

9.    The acts and/or omissions of unrelated third parties as alleged constituted independent, intervening causes for which Defendant cannot be liable.

## Tenth Defense

10.    Any injuries or expenses incurred by Plaintiffs were not caused by Bextra®, but were proximately caused, in whole or in part, by an idiosyncratic reaction, operation of nature, or act of God.

## Eleventh Defense

11.    Defendant affirmatively denies that it violated any duty owed to Plaintiffs.

## Twelfth Defense

12.    A manufacturer has no duty to warn patients or the general public of any risk, contraindication, or adverse effect associated with the use of a prescription medical product. Rather, the law requires that all such warnings and appropriate information be given to the prescribing physician and the medical profession, which act as a "learned intermediary" in determining the use of the product. Bextra® is a prescription medical product, available only on the order of a licensed physician. Bextra® provided an adequate warning to Plaintiff's treating and prescribing physicians.

## Thirteenth Defense

13.    The product at issue was not in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

## Fourteenth Defense

14.    Bextra® was at all times material to the Complaint reasonably safe and reasonably fit for its intended use and the warnings and instructions accompanying Bextra® at the time of the occurrence of the injuries alleged by Plaintiffs were legally adequate for its approved usages.

12465787.1

**Fifteenth Defense**

15.     Plaintiffs' causes of action are barred in whole or in part by the lack of a defect as the Bextra® allegedly ingested by Plaintiff was prepared in accordance with the applicable standard of care.

**Sixteenth Defense**

16.     Plaintiffs' alleged injuries/damages, if any, were the result of misuse or abnormal use of the product Bextra® after the product left the control of Defendant and any liability of Defendant is therefore barred.

**Seventeenth Defense**

17.     Plaintiffs' alleged damages were not caused by any failure to warn on the part of Defendant.

**Eighteenth Defense**

18.     Plaintiffs' alleged injuries/damages, if any, were the result of preexisting or subsequent conditions unrelated to Bextra®.

**Nineteenth Defense**

19.     Plaintiff knew or should have known of any risk associated with Bextra®; therefore, the doctrine of assumption of the risk bars or diminishes any recovery.

**Twentieth Defense**

20.     Plaintiffs are barred from recovering against Defendant because Plaintiffs' claims are preempted in accordance with the Supremacy Clause of the United States Constitution and by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 et. seq.

**Twenty-first Defense**

21.     Plaintiffs' claims are barred in whole or in part under the applicable state law because the subject pharmaceutical product at issue was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

12465787.1

### Twenty-second Defense

22.     The manufacture, distribution, and sale of the pharmaceutical product referred to in Plaintiffs' Complaint were at all times in compliance with all federal regulations and statutes, and Plaintiffs' causes of action are preempted.

### Twenty-third Defense

23.     Plaintiffs' claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product at issue under applicable federal laws, regulations, and rules.

### Twenty-fourth Defense

24.     Plaintiffs' claims are barred in whole or in part because there is no private right of action concerning matters regulated by the Food and Drug Administration under applicable federal laws, regulations, and rules.

### Twenty-fifth Defense

25.     Plaintiffs' claims are barred in whole or in part because Defendant provided adequate "direction or warnings" as to the use of the subject pharmaceutical product within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

### Twenty-sixth Defense

26.     Plaintiffs' claims are barred or limited to a product liability failure to warn claim because Bextra® is a prescription pharmaceutical drug and falls within the ambit of Restatement (Second) of Torts § 402A, Comment k.

### Twenty-seventh Defense

27.     Plaintiffs' claims are barred in whole or in part because the subject pharmaceutical product at issue "provides net benefits for a class of patients" within the meaning of Comment f to § 6 of the Restatement (Third) of Torts: Products Liability.

12465787.1

## Twenty-eighth Defense

28.     Plaintiffs' claims are barred under § 4, et seq., of the Restatement (Third) of Torts: Products Liability.

## Twenty-ninth Defense

29.     To the extent that Plaintiffs are seeking punitive damages, Plaintiffs have failed to plead facts sufficient under the law to justify an award of punitive damages.

## Thirtieth Defense

30.     Defendant affirmatively avers that the imposition of punitive damages in this case would violate Defendant's rights to procedural due process under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Florida, and would additionally violate Defendant's rights to substantive due process under the Fourteenth Amendment of the United States Constitution.

## Thirty-first Defense

31.     Plaintiffs' claims for punitive damages are barred, in whole or in part, by the Fifth and Fourteenth Amendments to the United States Constitution.

## Thirty-second Defense

32.     The imposition of punitive damages in this case would violate the First Amendment to the United States Constitution.

## Thirty-third Defense

33.     Plaintiffs' punitive damage claims are preempted by federal law.

## Thirty-fourth Defense

34.     In the event that reliance was placed upon Defendant's nonconformance to an express representation, this action is barred as there was no reliance upon representations, if any, of Defendant.

### Thirty-fifth Defense

35.    Plaintiffs failed to provide Defendant with timely notice of any alleged nonconformance to any express representation.

### Thirty-sixth Defense

36.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

### Thirty-seventh Defense

37.    Plaintiffs' claims are barred, in whole or in part, because the advertisements, if any, and labeling with respect to the subject pharmaceutical products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

### Thirty-eighth Defense

38.    To the extent that Plaintiffs seek punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, and the Full Faith and Credit Clause of the United States Constitution, and applicable provisions of the Constitution of the State of Florida.  Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide adequate advance notice as to what conduct will result in punitive

damages; (3) permits recovery of punitive damages based on out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiffs; (4) permits recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiffs and to the amount of compensatory damages, if any; (5) permits jury consideration of net worth or other financial information relating to Defendant; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages awards; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8) otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 (1991), *TXO Production Corp. v. Alliance Resources, Inc.*, 509 U.S. 443 (1993); *BMW of North America, Inc. v. Gore*, 519 U.S. 559 (1996); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## Thirty-ninth Defense

39.    The methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

## Fortieth Defense

40.    The claims asserted in the Complaint are barred because Bextra® was designed, tested, manufactured, and labeled in accordance with the state-of-the-art industry standards existing at the time of the sale.

### **Forty-first Defense**

41.     If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Defendant and over whom Defendant had no control and for whom Defendant may not be held accountable.

### **Forty-second Defense**

42.     The claims asserted in the Complaint are barred, in whole or in part, because Bextra® was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

### **Forty-third Defense**

43.     Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

### **Forty-fourth Defense**

44.     Plaintiffs' claims are barred because Plaintiffs' injuries, if any, were the result of the pre-existing and/or unrelated medical, genetic, and/or environmental conditions, diseases or illnesses, subsequent medical conditions or natural courses of conditions of Plaintiffs, and were independent of or far removed from Defendant's conduct.

### **Forty-fifth Defense**

45.     The claims asserted in the Complaint are barred, in whole or in part, because Bextra® did not proximately cause injuries or damages to Plaintiffs.

### **Forty-sixth Defense**

46.     The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendant's conduct.

12465787.1

### Forty-seventh Defense

47.    The claims asserted in the Complaint are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

### Forty-eighth Defense

48.    The claims must be dismissed because Plaintiff would have taken Bextra® even if the product labeling contained the information that Plaintiffs contend should have been provided.

### Forty-ninth Defense

49.    The claims asserted in the Complaint are barred because the utility of Bextra® outweighed its risks.

### Fiftieth Defense

50.    Plaintiffs' damages, if any, are barred or limited by the payments received from collateral sources.

### Fifty-first Defense

51.    Defendant's liability, if any, can only be determined after the percentages of responsibility of all persons who caused or contributed toward Plaintiffs' alleged damages, if any, are determined.  Defendant seeks an adjudication of the percentage of fault of the claimants and each and every other person whose fault could have contributed to the alleged injuries and damages, if any, of Plaintiffs.

### Fifty-second Defense

52.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Fifty-third Defense

53.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® is comprehensively regulated by the FDA pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated there under, and Plaintiffs' claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Bextra®.    Accordingly, Plaintiffs' claims are preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

### Fifty-fourth Defense

54.    Plaintiffs' misrepresentation allegations are not stated with the degree of particularity required by Federal Rule of Civil Procedure 9(b) and should be dismissed.

### Fifty-fifth Defense

55.    Plaintiffs' fraud-based claims, if any, are not stated with particularity as required by Rule 1.120 of the Florida Rules of Civil Procedure.

### Fifty-sixth Defense

56.    Plaintiffs' claims are barred because Bextra® was designed, manufactured, and marketed in accordance with the state of the art at the time of manufacture per § 768.1257, Florida Statutes.

### Fifty-seventh Defense

57.     Bextra® is not defective or unreasonably dangerous, and Defendant is not liable because, at the time of sale or distribution of the Bextra® alleged to have been used by Plaintiff, Defendant had complied with applicable regulations of the federal Food & Drug Administration and are entitled to application of § 768.1256, Florida Statutes.

### Fifty-eighth Defense

58.     Plaintiffs' injuries and damages, if any, were proximately caused by the negligence or fault of Plaintiffs, or persons or parties whose identities are unknown at this time, and such comparative negligence or fault is sufficient to proportionately reduce or bar Plaintiffs' recovery.  Thus, Defendant is entitled to have its liability to the Plaintiffs, if any, reduced as a result of the negligence or fault of said persons or entities, pursuant to the provisions of § 768.81, Florida Statutes.  To the extent any recovery is permitted in this case, pursuant to §§ 768.31 and 768.81, Florida Statutes, judgment must be entered on the basis of Defendant's percentage of fault, taking into account the percentage of fault attributable to all other persons, whether or not a party hereto, and not on the basis of joint and several liability. The persons or entities referred to in this paragraph that are presently unknown to Defendant will be identified in a timely manner consistent with *Nash v. Wells Fargo*, 678 So. 2d 1262 (Fla. 1996).

### Fifty-ninth Defense

59.     Plaintiffs fail to state a claim for violation of The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

### Sixtieth Defense

60.     FDUTPA does not apply to claims for personal injuries, and, accordingly, Plaintiffs' FDUTPA claim is improper and should be dismissed.

12465787.1

**Sixty-first Defense**

61.     The acts or practices of which Plaintiffs complain were and are required or specifically permitted by federal or state law.  Therefore, Plaintiffs' FDUTPA claim is barred, fails to state a claim, and should be dismissed with prejudice.

**Sixty-second Defense**

62.     Plaintiffs lack standing because Defendant did not engage in deceptive conduct with regard to Plaintiffs or otherwise.

**Sixty-third Defense**

63.     Defendant reserves the right to supplement its assertion of defenses as it continues with its factual investigation of Plaintiffs' claims.

**V.**
**JURY DEMAND**

Defendant hereby demands a trial by jury.

**VI.**
**PRAYER**

WHEREFORE, Defendant prays for judgment as follows:

1.     That Plaintiffs take nothing from Defendant by reason of the Complaint;

2.     That the Complaint be dismissed;

3.     That Defendant be awarded its costs for this lawsuit;

4.     That the trier of fact determine what percentage of the combined fault or other liability of all persons whose fault or other liability proximately caused Plaintiffs' alleged injuries, losses or damages is attributable to each person;

5.     That any judgment for damages against Defendant in favor of Plaintiffs be no greater than an amount which equals its proportionate share, if any, of the total fault or other liability which proximately caused Plaintiffs' injuries and damages; and

6.     That Defendant has such other and further relief as the Court deems appropriate.

December 4, 2007

s/ Edward W. Gerecke
Edward W. Gerecke
Florida Bar No. 328332
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., Suite 1000 (33607)
Post Office Box 3239
Tampa, Florida 33601
Telephone:    (813) 223-7000
Facsimile:    (813) 229-4133
E-Mail:        egerecke@carltonfields.com

Attorneys for Defendant Pfizer Inc.

## CERTIFICATE OF SERVICE

I CERTIFY that on December 4, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Lynn M. Sasso and Sally Prieto-Chomat, The Ferraro Law Firm, P.A., 400 Ponce de Leon Blvd., Suite 700, Miami, Florida 33146.

s/ Edward W. Gerecke
Attorney

12465787.1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VINCENT ROSENQUIST and
CONSTANCE ROSENQUIST,
his wife,

      Plaintiffs,

vs.                         CASE NO.: 8:07-cv-02011-JSM-EAJ

PFIZER, INC.; a foreign corporation,

      Defendant.

_____/

**DEFENDANT PFIZER INC.'S
FEDERAL RULE OF CIVIL PROCEDURE 7.1
DISCLOSURE STATEMENT**

      Pursuant to Federal Rule of Civil Procedure 7.1, Defendant Pfizer Inc. (incorrectly

captioned as "Pfizer, Inc.") submits this its Corporate Disclosure Statement.  Defendant Pfizer

Inc. states:

      1.      Defendant Pfizer Inc. does not have any parent corporations, and no publicly
traded company owns 10% or more of Pfizer Inc.'s stock.

                    Respectfully submitted,

                    /s/ Edward W. Gerecke
                    Edward W. Gerecke
                    Florida Bar No. 328332
                    CARLTON FIELDS, P.A.
                    Post Office Box 3239
                    Tampa, Florida 33601
                    Telephone:    (813) 223-7000
                    Facsimile:     (813) 229-4133
                    E-Mail:       egerecke@carltonfields.com
                    Attorneys for Pfizer Inc.

## CERTIFICATE OF SERVICE

I CERTIFY that on December 5, 2007, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to

Lynn M. Sasso and Sally Prieto-Chomat, The Ferraro Law Firm, P.A., 400 Ponce de Leon

Blvd., Suite 700, Miami, Florida 33146.


s/ Edward W. Gerecke
Attorney

A CERTIFIED TRUE COPY

JAN 3 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

8:07 CV2011

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 4 2007

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION

MDL No. 1699

(SEE ATTACHED SCHEDULE)

CONDITIONAL TRANSFER ORDER (CTO-91)

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,164 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is
pending at this time, the
stay is lifted.

JAN - 3 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 1-7-08

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION          MDL No. 1699

## SCHEDULE CTO-91 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

FLORIDA MIDDLE
  FLM 8  07-2011          Vincent Rosenquist, et al. v. Pfizer Inc.

MARYLAND
  MD  1  07-3130          Alex Bondarenko v. Pfizer Inc.
  MD  1  07-3131          Melvin Brown v. Pfizer Inc.
  MD  1  07-3133          Theodore Carter v. Pfizer Inc.
  MD  1  07-3134          Hobert Church, Jr. v. Pfizer Inc.
  MD  1  07-3135          Gary Cox v. Pfizer Inc.
  MD  1  07-3136          Raymond Deigert v. Pfizer Inc.
  MD  1  07-3137          Dana Johnson v. Pfizer Inc.
  MD  1  07-3138          Ruth Logan v. Pfizer Inc.
  MD  1  07-3139          Nora Manning v. Pfizer Inc.
  MD  1  07-3140          Esther Nimarko v. Pfizer Inc.
  MD  1  07-3141          Carolyn Owens v. Pfizer Inc.
  MD  1  07-3142          George Sherain, II v. Pfizer Inc.
  MD  1  07-3143          Inetta Wood v. Pfizer Inc.

MINNESOTA
  MN  0  07-4634          Vivian Cobb v. Pfizer Inc., et al.
  MN  0  07-4661          Gene Summers v. Pfizer Inc., et al.
  MN  0  07-4662          Ed Narke v. Pfizer Inc., et al.
  MN  0  07-4670          Charlotte Allen, et al., Pfizer Inc., et al.
  MN  0  07-4671          Joann Burkeen, et al. v. Pfizer Inc., et al.

MISSISSIPPI NORTHERN
  MSN  4  07-124          Claiborne Leon Collier, Sr., et al. v. Pfizer Inc., et al.

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION                    MDL No. 1699

### INVOLVED COUNSEL LIST (CTO-91)

Levi Boone, III
BOONE LAW FIRM
401 West Sunflower Road
P.O. Box 1772
Cleveland, MS 38732-1772

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN
& BERNSTEIN LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111-3339

Elizabeth L. Dudley
HUTTON & HUTTON LAW FIRM LLC
8100 East 22nd Street
North Building  1200
P.O. Box 638
Wichita, KS 67201-0638

Edward W. Gerecke
CARLTON FIELDS PA
4221 W. Boy Scott Boulevard
Suite 100
P.O. Box 3239
Tampa, FL 33601-3239

Walter T. Johnson
WATKINS & EAGER
P.O. Box 650
Jackson, MS 39205-0650

Gregory A. Markel
CADWALADER WICKERSHAM
& TAFT LLP
One World Financial Center
New York, NY 10281

Ted G. Meadows
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103-4160

Lynn M. Sasso
FERRARO LAW FIRM PA
4000 Ponce De Leon Blvd.
Suite 700
Miami, FL 33146

Amy W. Schulman
DLA PIPER US LLP
1251 Avenues of the Americas
27th Floor
New York, NY 10020-1104

Paul A. Weykamp
LAW OFFICES OF PAUL A WEYKAMP
16 Stenersen Lane
Suite 2
Hunt Valley, MD 21030

Martha K. Wivell
P.O. Box 339
Cook, MN 55723

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**                    MDL No. 1699

### INVOLVED JUDGES LIST (CTO-91)

Hon. James S. Moody, Jr.
U.S. District Judge
13A Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
Tampa, FL 33602

Hon. Richard D. Bennett
U.S. District Judge
5D Edward A. Garmatz Federal Bldg.
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. Andre M. Davis
U.S. District Judge
5B Edward A. Garmatz Federal Building
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2615

Hon. Benson Everett Legg
Chief Judge, U.S. District Court
7A Edward A. Garmatz Federal Building
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. J. Frederick Motz
U.S. District Judge
101 West Lombard Street
510 Edward A. Garmatz Federal Building
& U.S. Courthouse
Baltimore, MD 21201-2690

Hon. William D. Quarles, Jr.
United States District Judge
3A Edward A. Garmatz Fed. Bldg.
& U.S. Courthouse
101 West Lombard Street
Baltimore, MD 21201-2605

Hon. Michael James Davis
U.S. District Judge
14E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Donovan W. Frank
U.S. District Judge
738 Warren E. Burger Federal Bldg.
316 North Robert Street
St. Paul, MN 55101

Hon. Paul A. Magnuson
Senior U.S. District Judge
730 Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN 55101

Hon. James M. Rosenbaum
Chief Judge, U.S. District Court
15E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Michael P. Mills
Chief Judge, U.S. District Court
335 Federal Bldg. & U.S. Courthouse
911 Jackson Avenue, West
Oxford, MS 38655

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**                    MDL No. 1699

### INVOLVED CLERKS LIST (CTO-91)

Sheryl L. Loesch, Clerk
218 Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
Tampa, FL 33602-3800

Felicia C. Cannon, Clerk
Edward A. Garmatz Federal
Building & U.S. Courthouse
101 W. Lombard Street
Baltimore, MD 21201-2690

Richard Sletten, Clerk
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

David Crews, Clerk
U.S. District Court
305 Main Street
Room 329
Greenville, MS 38701

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:         [202] 502-2888
http://www.jpml.uscourts.gov

January 3, 2008

Richard W. Wieking, Clerk
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Re: MDL No. 1699 -- IN RE: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation

(See Attached CTO-91)

Dear Mr. Wieking:

I am enclosing a certified copy and one additional copy of a conditional transfer order filed by the Panel in the above-captioned matter on December 14, 2007. As stipulated in Rule 7.4(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), transmittal of the order has been stayed 15 days to give any party an opportunity to oppose the transfer. The 15-day period has now elapsed, no opposition was received, and the order is directed to you for filing.

The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "...transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred."

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By
Mecca S. Thompson
Docket Specialist

Attachment

cc:   Transferee Judge:        Judge Charles R. Breyer
      Transferor Judges:       (See Attached List of Judges)
      Transferor Clerks:       (See Attached List of Clerks)

JPML Form 36

MDLOUT , STAYED

### U.S. District Court
### Middle District of Florida (Tampa)
### CIVIL DOCKET FOR CASE #: 8:07-cv-02011-JSM-EAJ
### Internal Use Only

*214* **CRB**

CV 08

Rosenquist et al v. Pfizer, Inc.
Assigned to: Judge James S. Moody, Jr
Referred to: Magistrate Judge Elizabeth A. Jenkins
Cause: 28:1332 Diversity-Product Liability

Date Filed: 11/05/2007
Date Terminated: 01/09/2008
Jury Demand: Both
Nature of Suit: 365 Personal Inj.
Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Vincent Rosenquist**
represented by
Lynn M. Sasso
The Ferraro Law Firm
4000 Ponce De Leon Ave.
Suite 700
Miami, Fl 33146-1434
305/375-0111
Email: lms@ferrarolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Sally M. Prieto
The Ferraro Law Firm
4000 Ponce De Leon Ave.
Suite 700
Miami, Fl 33146-1434
305/375-0111
Email: smp@ferrarolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Constance Rosenquist**
represented by
Lynn M. Sasso
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Sally M. Prieto
(See above for address)

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida
By:
Deputy Clerk

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

Pfizer, Inc.
*a foreign corporation*

represented by Edward W. Gerecke
Carlton Fields, PA
4221 W Boy Scout Blvd - Suite 1000
PO Box 3239
Tampa, FL 33601-3239
813/223-7000
Fax: 813/229-4133
Email:
egerecke@carltonfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/05/2007 | 1 | COMPLAINT against Pfizer, Inc. ; JURY DEMAND (Filing fee $ 350 receipt number T043739) filed by Vincent Rosenquist, Constance Rosenquist.(apv) (Entered: 11/06/2007) |
| 11/05/2007 | 2 | Summons Issued as to Pfizer, Inc.. (apv) (Entered: 11/06/2007) |
| 11/08/2007 | 3 | NOTICE of designation under Local Rule 3.05 - track 2 issued by Deputy Clerk on 11/8/2007. (smb) (Entered: 11/08/2007) |
| 12/04/2007 | 4 | ANSWER and affirmative defenses to 1 Complaint with Jury Demand by Pfizer, Inc..(Gerecke, Edward) (Entered: 12/04/2007) |
| 12/05/2007 | 5 | CERTIFICATE of interested persons and corporate disclosure statement *pursuant to Federal Rule of Civil Procedure 7.1* by Pfizer, Inc.. (Gerecke, Edward) (Entered: 12/05/2007) |
| 12/05/2007 | 6 | Unopposed MOTION to stay all proceedings pending transfer to multidistrict litigation proceeding by Pfizer, Inc.. (Gerecke, Edward) (Entered: 12/05/2007) |
| 12/27/2007 | 7 | ENDORSED ORDER granting 6 Defendant's Motion for STAY of all proceedings pending MDL transfer. Signed by Judge James S. Moody, Jr on 12/27/2007. (LN) (Entered: 12/27/2007) |
| 01/09/2008 | 8 | MULTIDISTRICT LITIGATION panel order transferring case to: Northern District of California MDL case number: 1699 (JLH) |

| | | (Entered: 01/10/2008) |